Anthony J. Sylvester, Esq. (asylvester@shermanwells.com)
Jordan D. Weinreich, Esq. (jweinreich@shermanwells.com)
SHERMAN WELLS SYLVESTER & STAMELMAN LLP
1185 Avenue of the Americas, 3rd Floor
New York, New York 10036
212-763-6464

*Attorneys for Plaintiff Super Win Enterprises Corp.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUPER WIN ENTERPRISES CORP., | Case No.: 18-cv-7375 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| BLUE SECOND TRADING INC. and YING AI YANG, | |
| Defendants. | |

Plaintiff Super Win Enterprises Corp. ("Super Win"), by way of Complaint against defendants Blue Second Trading Inc. ("Blue Second") and Ying Ai Yang ("Yang", and together with Blue Second, "Defendants"), hereby alleges and says:

**THE PARTIES**

1. Super Win is a corporation duly organized and existing under the laws of the State of New York, maintaining its corporate headquarters and principal place of business at 1819 Flushing Avenue, Flushing, New York 11385.

2. Upon information and belief, Blue Second is a corporation duly organized and existing under the laws of the State of New York, maintaining its corporate headquarters and principal place of business at 86-49 Grand Avenue, Suite B, Flushing, New York 11373.

3. Upon information and belief, Yang is an individual residing at 11 Baltic Street, 1st Floor, Brooklyn, New York 11201.

## JURISDICTION AND VENUE

4. Super Win is asserting claims for copyright infringement arising under the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.* (the "Copyright Act") and for trademark infringement arising under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"). Accordingly, the Court has subject matter pursuant to 17 U.S.C. § 501, 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has supplemental jurisdiction over Super Win's pendent state law claims pursuant to 28 U.S.C. § 1367 in that the state law claims are integrally interrelated with Super Win's federal claims and arise from a common nucleus of operative facts such that the administration of Super Win's state law claims with its federal claims furthers the interest of judicial economy.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and § 1400 because Defendants conduct business, may be found, and are subject to personal jurisdiction here.

## FACTS

7. Super Win is a paper and plastic distribution company servicing customers across the United States, but primarily in the New York Metropolitan area.

8. In addition, Super Win develops food products for distribution. One such product is the "Yeh San" brand of rice.

9. On or about December 10, 2007, Yang commenced his employment with Super Win.

10. At the time, Super Win had been developing a new rice product to bring to market and hired Yang to assist with the development of the product and subsequently to sell the product. The product was to be called "Yeh San Brand Rice".

11. Yang collaborated with Super Win shareholders Wai Kwong Yau and Florence Lee and Super Win employee YeeQuen Huie on this project. Among other things, this group developed a distinctive packaging for the brand.

12. While employed with Super Win, and acting on its behalf, Yang engaged a Chinese calligrapher to draw four Chinese characters, Ye Sheng Xiang Mi (野生香米), to be used on the Yeh San packaging. Yang provided no compensation to the calligrapher for his work.

13. Ultimately, Super Win developed a distinctive packaging design for its Yeh San brand. The packaging incorporated, among other designs, two concentric circles: the inner circle is a color image of a rice field overlaid with vertical Chinese calligraphy in a red color, spelling 野生香米, which translates to "wild basmati rice"; and the outer circle is yellow with the text "YEH SAN BRAND RICE" located at the top of the circle and the bottom of the circle, both centered and in the same red color as the calligraphy.

14. A reproduction of this concentric circle design is reproduced below:



15. Since 2007, Super Win's Yeh San brand has been sold up and down the East Coast and Super Win's packaging for its Yeh San brand, including the concentric circle design, is recognized in the industry and associated with Super Win's high-quality brand.

16. As noted, Yang was employed by Super Win as a salesperson. In that role, he sold, among other things, the Yeh San rice to Super Win's customers.

17. In or about the spring of 2008, Yang approached Super Win and requested that he be permitted to continue selling the Yeh San brand rice on a commission-basis as an independent contractor, with the commissions being paid to his company, Defendant Blue Second.

18. Super Win agreed to Yang's proposal. On or about July 1, 2008, Yang's employment with Super Win was terminated and, as agreed, he continued to sell Yeh San rice through his company, Blue Second.

19. Because of his job as salesperson for Super Win, Yang had unfettered access to Super Win's customer list.

20. Unbeknownst to Super Win, beginning in and around 2014, Defendants commenced a scheme to sell a counterfeit Yeh San product using an almost exact duplication of Super Win's Yeh San packaging, including the concentric circle design.

21. Upon information and belief, Defendants procured at least 26 containers of rice from a supplier in Vietnam to be sold by Defendants to Super Win's customers and which bore Super Win's distinctive packaging.

22. It was not until March 2016 that Super Win became aware that Defendants were selling and/or distributing the counterfeit Yeh San rice to Super Win's customers and to other customers in the same geographic location.

23. Defendants did not begin to sell their counterfeit product until Super Win had already established the Yeh San brand as a high-quality product that is easily recognizable by its packaging.

24. Reproduced below is a photograph of Defendants' counterfeit product, which bears all the hallmarks of the Yeh San brand, including, but not limited to, the concentric circle design, but includes the name of "Blue Second Trading Inc." on the packaging.




25. Such duplication by Defendants of Super Win's Yeh San packaging was not authorized by Super Win.

26. Because of Defendants' illegal duplication of Super Win's packaging, customers familiar with Super Win's Yeh San brand are likely to assume incorrectly that the rice products provided by Defendants are, in fact, produced by Super Win, especially due to the fact that

Defendants had unfettered access to Super Win's customer base and transact business in the same geographic location.

27. To be clear, Super Win never authorized or otherwise consented to Defendants' use of any element of its packaging design, including, but not limited to, the concentric circle design, in connection with Defendants' distribution of rice or any other products or services.

28. On April 7, 2016, Super Win sent Defendants a cease and desist letter demanding, *inter alia*, that Defendants cease and desist from infringing upon Super Win Yeh San rice packaging design (the "Cease and Desist Letter").

29. Additionally, Super Win demanded that Defendants not approach any of Super Win's customers and return all information that Defendants have pertaining to the Super Win's Yeh San rice or Super Win's customers.

30. To date, Defendants have not responded to or otherwise indicated a willingness to comply with Super Win's Cease and Desist Letter.

31. Despite being warned, upon information and belief, Defendants continue to unlawfully reproduce Super Win's Yeh San packaging in connection with the sale of rice products.

32. Defendants' intentional infringement and disregard of Super Win's superior intellectual property rights are willful, blatant and malicious.

33. Defendants' actions were taken due to Yang's erroneous and baseless claim that he is the copyright owner of the concentric circle design.

34. Defendants' conduct is causing immediate and irreparable injury to Super Win's goodwill and reputation and Defendants' conduct will continue to damage Super Win and deceive the public unless and until Defendants' conduct is enjoined by this Court.

## COUNT I
### (Copyright Infringement – 17 U.S.C. §106, *et seq.*)

35. Super Win repeats and re-alleges each of the foregoing allegations set forth above as if set forth fully herein.

36. At the time that Yang procured the Chinese calligraphy that is used in the concentric circle design, he was employed by Super Win, and he was procuring said calligraphy on behalf of his employer for the sole purpose of its use on the packaging for Super Win's Yeh San rice.

37. Yang now claims he is the author and/or owner of all or some portion of the concentric circle design, including the Chinese calligraphy and/or the Chinese calligraphy imposed over the circular picture of the rice field.

38. However, Yang was acting within the scope of his employment when he procured the calligraphy.

39. Similarly, even if it were Yang that created imposed the calligraphy over the rice field picture, he was acting within the scope of his employment when so doing.

40. Thus, to the extent that all or some portion of the concentric circle design, including the Chinese calligraphy and/or the Chinese calligraphy imposed over the circular picture of the rice field are deemed to be work entitled to the protections of the Copyright Act, it would be work made for hire.

41. Pursuant to 17 U.S.C. § 201(b), "[i]n the case of a work made for hire, the employer…for whom the work was prepared is considered the author for purposes of [the Copyright Act], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."

42. Thus, Super Win is deemed to be the author of the work (*i.e.,* the concentric circle design, and any component portion thereof) for copyright purposes and is the owner of the work's copyright.

43. Defendants have produced, reproduced, prepared derivative works based upon, distributed, and publicly displayed Super Win's protected work or derivatives of Super Win's protected work without Super Win's authorization and/or consent.

44. Defendants' acts violate Super Win's exclusive rights under the Copyright Act, 17 U.S.C. § 106 and § 501, including, but not limited to, Super Win's exclusive rights to produce and reproduce the work.

45. Defendants' infringement has been undertaken knowingly, and with intent to financially gain from Super Win's protected copyrighted work. Accordingly, Defendants have directly infringed Super Win's copyrighted work.

46. Because of Defendants' infringing acts, Super Win is entitled to its actual damages and Defendants' profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act.

47. Further, Defendants' infringement has caused and is causing irreparable harm to Super Win, for which it has no adequate remedy at law. Unless this Court restrains Defendants from infringing Super Win's protected work, the harm will continue to occur in the future. Accordingly, Super Win is entitled to preliminary and permanent injunction.

## COUNT II
### (Trademark Infringement – 15 U.S.C. § 1125(a))

48. Super Win repeats and re-alleges each of the foregoing allegations set forth above as if set forth fully herein.

49. Since 2007, Super Win has used packaging incorporating the concentric circle design. This packaging constitutes a distinctive trade dress that is easily recognizable by Super Win's customers (the "Super Win Trade Dress").

50. An example of the Super Win Trade Dress is reproduced below:



51. Since 2007, Super Win has used the Super Win Trade Dress in connection with its distribution of its "Yeh San Brand Rice".

52. Super Win's Yeh San rice is sold on the East Coast from New York to North Carolina and from Tennessee to Florida. During this time, the Super Win Trade Dress has become recognized in the industry and associated with Super Win's high-quality rice.

53. Super Win developed the Super Win Trade Dress in connection with the development of its Yeh San brand of rice. As such, Super Win was the first to use the Super Win Trade Dress.

54. By virtue of Super Win's exclusive, continuous, and long-standing use of the Super Win Trade Dress in connection with its Yeh San rice, such trade dress has come to represent—and

has become inextricably intertwined with—the valuable goodwill and reputation of Super Win and associated with Super Win's high-quality rice.

55. As described above, Super Win owns all rights, title and interest in and to the Super Win Trade Dress.

56. Unbeknownst to Super Win, since at least as far back as 2014, Defendants have been selling a counterfeit rice product using the Super Win Trade Dress.

57. Defendant Blue Second is located in and conducts business in the same geographic region as Super Win.

58. Defendants' unlawful and improper actions, as set forth above, are likely to cause confusion, mistake or deception as to the source, origin or affiliation, sponsorship, and association of Defendants' goods and to mislead actual and prospective customers in the market for rice into falsely believing that Defendants' goods originate or are otherwise connected with or sanctioned by Super Win, especially in view Defendants' access to Super Win's customers and use of the Super Win Trade Dress in the same geographic location, when, in fact, they are not.

59. By using the Super Win Trade Dress in commerce in connection with the distribution of their counterfeit rice product, Defendants have infringed upon Super Win's trademark rights.

60. As a direct and proximate result of Defendants' infringement, Super Win has sustained and is likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation and goodwill, for which Super Win has no adequate remedy at all.

61. By reason of the foregoing acts, Defendants are liable to Super Win for trademark infringement and Super Win is entitled to preliminary and permanent injunctive relief and monetary damages.

## COUNT III
**(Common Law Trademark Infringement)**

62. Super Win repeats and re-alleges each of the foregoing allegations set forth above as if set forth fully herein.

63. Since 2007, Super Win has used the Super Win Trade Dress in connection with its distribution of its "Yeh San Brand Rice".

64. Super Win's Yeh San rice is sold on the East Coast from New York to North Carolina and from Tennessee to Florida. During this time, the Super Win Trade Dress has become recognized in the industry and associated with Super Win's high-quality rice.

65. Super Win developed the Super Win Trade Dress in connection with the development of its Yeh San brand of rice. As such, Super Win was the first to use the Super Win Trade Dress.

66. Through its extensive use of the Super Win Trade Dress in commerce in connection with its distribution of the Rice, Super Win has developed common law trade dress rights in the Super Win Trade Dress.

67. By virtue of Super Win's exclusive, continuous, and long-standing use of the Super Win Trade Dress in connection with its Rice, such trade dress has come to represent – and has become inextricably intertwined with – the valuable goodwill and reputation of Super Win and associated with Super Win's high-quality Rice.

68. Blue Second is located in and conducts business in the same geographic region as Super Win.

69. As described above, Super Win owns all rights, title and interest in and to the Super Win Trade Dress.

70. Super Win's use of the Super Win Trade Dress in connection with its distribution of its Yeh San brand of rice has been substantially exclusive, continuous and long standing.

71. The Super Win Trade Dress is distinctive, and representative of the extensive goodwill built up by Super Win.

72. By using the Super Win Trade Dress in commerce in connection with the distribution of rice products, Defendants have infringed Super Win's common law trademark rights.

73. Defendants' unlawful and improper actions, as set forth above, are likely to cause confusion, mistake or deception as to the source, origin or affiliation, sponsorship, and association of Defendants' goods and to mislead actual and prospective customers in the market for rice into falsely believing that Defendants' goods originate or are otherwise connected with or sanctioned by Super Win, especially in view Defendants' access to Super Win's customers and use of the Super Win Trade Dress in the same geographic location, when, in fact, they are not.

74. As a direct and proximate result of Defendants' infringement, Super Win has sustained and is likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation and goodwill, for which Super Win has no adequate remedy at all.

75. By reason of the foregoing acts, Defendants are liable to Super Win for common law trademark infringement and Super Win is entitled to preliminary and permanent injunctive relief and monetary damages.

76. Defendants were aware of Super Win's rights in the Super Win Trade Dress and committed the above-mentioned acts willfully and in conscious disregard of Super Win's rights.

77. Even after having been provided with notice of Super Win's rights by way of the Cease and Desist Letter, Defendants continue to use Super Win's Trade Dress.

78. Super Win is entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount to be determined at trial.

## COUNT IV
### (Violation of General Business Law § 349)

79. Super Win repeats and re-alleges each of the foregoing allegations set forth above as if set forth fully herein.

80. Defendants' use of the Super Win Trade Dress constitutes an effort to pass off its counterfeit rice products as originating from Super Win, especially in view of Defendants access to Super Win's customers and use of the Super Win Trade Dress in the same geographic region.

81. Defendants' use of the Super Win Trade Dress is deceptive and causes a likelihood of consumer confusion and misunderstanding as to the source of Defendants' rice products.

82. Defendants' actions are willful and deliberate.

83. Defendants' actions are customer-oriented, directed at the population at large.

84. Defendants' actions are materially fraudulent and misleading and are intended to cause injury to customers and harm the public interest.

85. Defendants' conduct caused and will continue to cause damage to Super Win.

86. Defendants' conduct has damaged Super Win in an amount to be determined at trial.

## COUNT V
### (Violation of General Business Law § 350)

87. Super Win repeats and re-alleges each of the foregoing allegations set forth above as if set forth fully herein.

88. Defendants' use of the Super Win Trade Dress constitutes an effort to pass off its counterfeit rice products as originating from Super Win, especially in view of Defendants access to Super Win's customers and use of the Super Win Trade Dress in the same geographic region.

89. Defendants' use of the Super Win Trade Dress is deceptive and causes a likelihood of consumer confusion and misunderstanding as to the source of Defendants' rice products.

90. Defendants' conduct constitutes false advertising in connection with its sale of rice products.

91. Defendants' conduct caused and will continue to cause damage to Super Win.

92. Defendants' conduct has damaged Super Win in an amount to be determined at trial.

## COUNT VI
### (Violation of General Business Law § 360-l)

93. Super Win repeats and re-alleges each of the foregoing allegations set forth above as if set forth fully herein.

94. Super Win owns all rights, title and interest to the Super Win Trade Dress

95. Super Win has used the Super Win Trade Dress throughout the State of New York for at least the last nine years and has played a prominent role in Super Win's sale of its Yeh San rice.

96. Through continuous use in commerce, including commerce within the State of New York, the Super Win Trade Dress is distinctive, and it is representative of the extensive goodwill built up by Super Win.

97. By using the Super Win Trade Dress in commerce in connection with the distribution of rice products, Defendants have diluted Super Win's distinctiveness in its use of the Super Win Trade Dress.

98. Defendants' actions, as set forth above, are likely to cause confusion, mistake or deception as to the source, origin or affiliation, sponsorship, and association of Defendants' goods and to mislead actual and prospective customers in the market for rice into falsely believing that

Defendants' goods originate or are otherwise connected with or sanctioned by Super Win, especially in view of Defendants access to Super Win's customers and use of the Super Win Trade Dress in the same geographic region, when, in fact, they are not.

99. As a direct and proximate result of Defendants' conduct, Super Win has sustained and is likely to continue to sustain substantial monetary damages and irreparable injury to its business, reputation and goodwill, for which Super Win has no adequate remedy at all.

100. By reason of the foregoing acts, Super Win is entitled to preliminary and permanent injunctive relief and monetary damages.

**WHEREFORE**, Super Win respectfully requests judgment against Defendants:

(a) Preliminarily and permanently enjoining and restraining Defendants and their officers, directors, shareholders, agents, employees, attorneys and all those acting in concert with them from:

    (i) Producing, reproducing, preparing derivative works based upon, distributing and/or displaying Super Win's protected work or derivatives of Super Win's protected work without Super Win's authorization and/or consent;

    (ii) Using the Super Win Trade Dress and/or any colorable imitation or close variation thereof;

    (iii) Using any false designation of origin or performing any act which is likely to lead to the public believing that any products distributed by Defendants are associated or otherwise connected with Super Win;

    (iv) Engaging in any course of conduct likely to dilute the distinctive nature of the Super Win Trade Dress; and

    (v) Engaging in any other action constituting unfair competition or unjust enrichment.

(b) Ordering an accounting of all revenues and income received by Defendants as a result of their unlawful conduct.

(c) Awarding Super Win: (1) Defendants' profits realized as a result of the copyright infringement, trademark infringement, unfair competition, and/or dilution committed by Defendants, or in the Court's discretion, such sum as the Court finds to be just; (2) actual damages sustain by Super Win, or such other amount as the Court may find just and (3) the costs of this action.

(d) Awarding Super Win exemplary and punitive damages to deter any future willful infringement.

(e) Awarding Super Win treble damages and attorneys' fees, as prescribed by law.

(f) Awarding Super Win prejudgment and post-judgment interest on any monetary award in this action.

(g) Directing Defendants, within thirty days after the service of judgment upon them, to file with the Court and serve upon Super Win, a written report under oath stating in detail the manner in which Defendants has complied with the above.

(h) Granting such other and further relief as this Court deems just and proper.

        SHERMAN WELLS SYLVESTER & STAMELMAN LLP
        *Attorneys for Plaintiff*
        *Super Win Enterprises Corp.*

        By: s/Jordan D. Weinreich
             JORDAN D. WEINREICH

        1185 Avenue of the Americas, 3rd Fl.
        New York, New York 10036
        212-763-6464
        jweinreich@shermanwells.com

DATED: December 27, 2018

4833-0830-7329, v. 1